UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHARLES LAMONT CASEY,

    Petitioner,

v.                                 CASE NO: 5:12-CV-470-Oc-30PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition, Respondents' Response (Dkt. #12) and Petitioner's Reply (Dkt. #16). Upon review, the Court determines that the petition should be denied.

## BACKGROUND[1]

Casey was charged with armed home invasion robbery and possession of a firearm by a convicted felon relating to a robbery of William Gaines on November 13, 2006. The charge of possession of a firearm by a convicted felon was severed and Casey pled guilty after the jury found him guilty of the armed home invasion robbery charge. Casey's

---

[1] The factual background is taken from the facts contained in Casey's brief on direct appeal, Exhibit H.

girlfriend, Heather Graham, was charged as a co-defendant, but pled guilty to the home invasion charge pursuant to a plea agreement. She testified against Casey at trial.

Williams Gaines is a contractor in charge of running fruit picking crews. Prior to being robbed, he had most recently been employed in Pennsylvania running an apple picking crew. He had just returned from Pennsylvania and had $1,130 in cash in his possession.

On the afternoon of Monday, November 13, 2006, Gaines was visited at his home by Gail Thompson, a young woman he occasionally helped financially. Thompson was a friend of Heather Graham. Graham also knew Gaines because he had helped her and her mother in the past by allowing them to live with him for a period of time when they had no other place to live.

Thompson asked Gaines for $5 so she could buy some hamburgers for her children at McDonald's. When Gaines gave Thompson the $5, she saw he was in possession of a large amount of cash.

Later that night, Thompson, Graham and Casey went for a ride. They stopped the car near Gaines' house. Graham went to Gaines' house and asked to use his telephone. Gaines agreed, let her in, and then returned to his bedroom. After a short time, Graham came to Gaines' room, and asked to borrow $20. Gaines refused to loan her the money. Graham left.

As Graham left the house, a man entered, covered his face with his shirt, held a silver pistol to Gaines' head, and demanded money. Gaines said the money was in his trousers, which Gaines had taken off earlier. The man picked up the trousers and found the $1,130 in cash.

During the robbery, the shirt had slipped down, and Gaines saw the robber's face. The next day, Gaines spoke with Graham's mother, and told her he suspected Graham had been involved in the robbery. Graham's mother said that the man involved must have been Graham's boyfriend, Charles Casey. Gaines gave that information to the police.

The police put together a photo array including a photograph of Casey and showed it to Gaines. Gaines immediately identified Casey as the robber. Gaines also identified Casey in person in court.

Graham testified on behalf of the state. In spite of Gaines' testimony that the man came in as Graham walked out his front door, Graham testified that she did not see Casey in or near Gaines' house. But she did say that, later in the car, she saw Casey with a silver revolver and some cash. He claimed he had only gotten $30 and was angry with Thompson for sending him on a "bad trip." Graham said Casey was angry because "that man didn't have any money." Casey then gave Thompson $10 and kept $20 for himself.

Casey was sentenced to a term of natural life in state prison for the armed home invasion robbery as a prison releasee reoffender, and a concurrent term of thirty years as a habitual felony offender as to the firearm possession. Casey appealed. The appellate court affirmed the judgment and sentence. *Casey v. State*, 995 So. 2d 511 (Fla. 5th DCA 2008).

Casey filed a motion for post-conviction relief raising six grounds. The post-conviction court summarily denied five of the grounds and held an evidentiary hearing on the claim in which Casey contended his lawyer had misadvised him concerning testifying at

trial. After the evidentiary hearing, the post-conviction court denied all claims. Casey appealed. The appellate court affirmed. *Casey v. State*, 90 So. 3d 300 (Fla. 5th DCA 2012.)

Casey then timely filed the instant petition for writ of habeas corpus raising five claims of ineffective assistance of counsel:

**Ground One:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to object to hearsay testimony which directly implicated Mr. Casey in the charged offense was an unreasonable application of, clearly established federal law – *Strickland. Washington*.

**Ground Two:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to present testimony of a witness to whom an inordinate amount of hearsay testimony was attributed which allegedly implicated Mr. Casey in the charged offense was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

**Ground Three:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to impeach a co-defendant's testimony with her prior convictions was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

**Ground Four:** State court's adjudication of whether Mr. Casey was denied his constitutional right to due process, as well as to the effective assistance of counsel, when trial counsel failed to move to exclude both the in court and out-of-court identifications by the complainant was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

**Ground Five:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel prohibited Mr. Casey from testifying in his own defense was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

## **DISCUSSION**

The law regarding ineffective assistance of counsel claims is well settled. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the

judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

**<u>Ground One:</u>**   State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to object to hearsay testimony which directly implicated Mr. Casey in the charged offense was an unreasonable application of, clearly established federal law – *Strickland. Washington*.

In support of Ground One Casey argues:

> In the instant case, the Complainant was permitted to testify that the co-defendant's mother implicated Mr. Casey. The Complainant testified that the morning after the alleged incident, he traveled to the co-defendant's mother's work to speak with her. It was during that conversation, which the Complainant recounted for the jury, that the co-defendant's mother suggested Mr. Casey's involvement. Based on that information, the Complainant immediately phoned the police, a photographic lineup was made, and the Complainant identified Mr. Casey that same day. In fact, the police never even interviewed her. To allow the Complainant to testify as to entirely unsubstantiated conversation which directly inculpated Mr. Casey was ineffective assistance of counsel. Similarly, in the instant case, the jury heard the statements from a sympathetic elderly complainant as opposed to the declarant who as the mother of a co-defendant and herself a convicted felon on probation.
>
> By permitting the Complainant to relay a conversation with Ms. Cooper, Mr. Casey Petitioner was denied the constitutional right to confront his accusers. And the right to examine Ms. Cooper to determine whether such a conversation occurred, whether the Complainant's recitation was accurate, and to further explore Ms. Cooper's bias in protecting her daughter.

Petition, (Dkt. #1), pp. 3-4.

Contrary to Casey's contention, his trial counsel did not provide ineffective representation nor was Casey prejudiced by his counsel's failure to object. In denying this same claim, the state post-conviction court said:

> In ground one, Defendant claims that counsel was ineffective for failing to object to the victim's testimony that the co-defendant's mother implicated the Defendant. Defendant claims that failing to object prejudiced the Defendant because "the jury heard the statements from a sympathetic elderly complainant as opposed to the declarant who was the mother of a co-defendant and herself a convicted felon on probation."
>
> The co-defendant, Heather Graham, was a long time friend of the victim and was living with Defendant. On the night of the robbery, Ms. Graham went to the victim's residence and asked to borrow money. The victim declined, and as Ms. Graham was leaving the victim's residence, a man walked in with a firearm and robbed the victim. The victim immediately called the police and gave them Ms. Graham's name. The next morning the victim spoke with Ms. Graham's mother. The victim testified about that conversation stating:
>
>> *A: I come by her job, I said, you know your daughter come to my house and somebody robbed me last night? She said, well, you know it had to be who it was. So she said, well, why she do that good as you was to us, why would she do a thing like that? I said I don't know.*
>> *Q: Did she give you a name of somebody other than –*
>> *A: She said it had to be nobody but Charles Casey.*
>> *Q: Okay so she indicated to you that Heather was living with Charles Casey?*
>> *A: Yes, ma'am.*
>
> *Trial Transcript*, p. 153, attached hereto as Exhibit "A."
>
> First, the Court finds that counsel was not ineffective for failing to object to the statement, because the statement was not hearsay. The statement was used to indicate that the co-defendant was living with Defendant and to show how the victim became aware of the identity of Defendant, not to show that Defendant was the perpetrator of the crime. Next, even if the statement was hearsay and counsel failed to object, prejudice cannot be established. The jury was shown through evidence and testimony that: (1) the victim saw Defendant

>during the robbery and thereafter picked him out of a lineup; (2) that after the robbery, Defendant contacted victim and offered to pay him if he would recant his identification; (3) that the co-defendant testified she was with Defendant on the night of the robbery, and saw him with money and a silver revolver; and (4) that after Defendant learned he was wanted for questioning, he sold the firearm he was seen with the night of the robbery. *Trial Transcript*, p. 153-54, 161; 158-160; 205-06; and 211-12, attached hereto as Exhibit "B." Therefore, had the victim's testimony regarding the co-defendant's mother's identification of Defendant been excluded, it is unlikely the outcome of trial would have been changed due to the volume of other evidence and testimony that inculpated Defendant. Therefore, because Defendant cannot show either deficiency or prejudice, the burden under *Strickland* has not been met, and ground one must be denied.

Order Denying Defendant's Motion for Post-Conviction Relief, Exhibit X, pp. 2-3.

In making that ruling, the post-conviction court properly examined the issue under the *Strickland* standard and properly applied federal law. Casey's trial counsel did not provide deficient performance because the statement in question was not hearsay and was a matter of trial strategy.

Hearsay is defined in Federal Rule of Evidence 801(c):

>"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The statement made by Graham's mother to Gaines was not offered to prove the truth of the matter asserted. The statement, "it had to be nobody but Charles Casey," was not offered to prove that it was Charles Casey that committed the robbery because, obviously, Graham's mother was not a witness to the robbery and did not know for a fact who committed it. She was merely speculating. The statement was offered to explain how Gaines came across the name of Charles Casey to provide as a suspect to the police. Casey's trial counsel used that

to her advantage – she not only cross-examined Gaines about it, but also the police officer, to show that the name of Charles Casey only came to the attention of the police through sheer speculation. Contrary to Casey's contention, this strategy was more to his advantage than detriment.

The post-conviction court was also correct that Casey cannot show that he was prejudiced by the admission of the statement. The victim identified Casey's photograph in a photo array, and Casey subsequently contacted the victim and offered to pay him if he would recant his identification, and Graham testified that she was with Casey the night of the robbery, Casey was in the vicinity of Gaines' house at the time of the robbery, and afterwards she saw Casey with money and a silver revolver. Casey has not demonstrated that the result of the trial would have been different had the statement from Graham's mother been excluded.

Therefore, Ground One will be denied.

**Ground Two:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to present testimony of a witness to whom an inordinate amount of hearsay testimony was attributed which allegedly implicated Mr. Casey in the charged offense was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

In support of Ground two, Casey asserts:

At trial, the Complainant testified that he called a Delores Cooper, who happened to be the mother of a co-defendant, Heather Graham, in the instant case. According to the Complainant, Mr. Cooper stated that Mr. Casey was with Ms. Graham on the night of the alleged incident. Ms. Cooper, however, did not say that to the Complainant. Ms. Cooper would have testified that she informed the Complainant that Ms. Graham, who the Complainant felt set him

> up for the robbery usually spends her time with Mr. Casey. In fact, Ms. Cooper explained to the Complainant, she kicked Mr. Casey and Ms. Graham out of her apartment two weeks prior to the alleged incident. The Complainant inquired as to Mr. Casey's appearance, and Ms. Cooper explained what he looked like. Moments later, the Complainant called the detective, provided Mr. Casey's name, a new description, and picked Mr. Casey out of a photo lineup.
>
> The Complainant testified at length regarding this alleged conversation with Ms. Cooper to provide her version of the conversation which would have directly contradicted that of the Complainant. The importance of this conversation cannot be underestimated, as it is from that conversation that Mr. Casey's name arose as a suspect in the instant case.

Petition, (Dkt. #1), pp. 6-7.

Casey has supported this claim by filing his own affidavit purporting to be of his own "personal knowledge" in which he states that Ms. Cooper told an investigator prior to the post-conviction hearing:

> She knew nothing of the incident in question other than what was told to her. She said that Mr. Gaines (the victim) did visit her job the day after the robbery, but she did <u>not</u> implicate anyone.

Casey Affidavit, Dkt. #23. In a footnote to the affidavit, Casey contends that the statement to the investigator is in direct conflict with the testimony of Gaines.

To the contrary, Cooper could not implicate anyone in the robbery since she was not a witness to it. And this statement does not contradict Gaines' version that Cooper told him Graham was living with Charles Casey, and they spent time together. Regardless of how the police learned of the name of Charles Casey, it is without dispute that the victim picked Casey out of a photo array the day after the robbery. That fact would not have been altered by Cooper testifying at trial. She knew nothing about the facts of the robbery itself. It is

unlikely Cooper's testimony would have changed the result of the trial. Therefore, Casey has failed to carry his burden to show prejudice.

**Ground Three:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel failed to impeach a co-defendant's testimony with her prior convictions was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

In support of Ground Three, Casey contends:

Ms. Heather Graham, a co-defendant in the instant case, testified for the State. In exchange for her testimony in the instant case, Ms. Graham, as a result, provided testimony which directly inculpated Mr. Casey. Defense counsel, however, failed to impeach Ms. Graham with her prior felony conviction for battery. This conviction is more pertinent than usual, as the battery was against Gail Thompson, a subpoenaed co-defendant who did not show up at trial. To impeach Ms. Graham with this felony and the fact that it was perpetrated against a witness whom would have supported the defense theory of the case, would have been significant.

Prior to this case, Ms. Graham was adjudicated guilty of numerous criminal offenses in Lake County, Florida, alone. Ms. Graham had two prior misdemeanor convictions for providing a false name to a law enforcement officer, one misdemeanor shoplifting, one misdemeanor impersonating a police officer, one misdemeanor fraud, one felony forgery, one felony forged check, one felony theft and one felony battery. This litany of prior convictions was completely ignored by trial counsel. The fact that Ms. Graham had at least nine prior offenses suitable as impeachment evidence went completely ignored by counsel. Counsel's failure to impeach this witness is wholly inexcusable. Ms. Graham testified against Mr. Casey in exchange for a lenient sentence in the instant case. It was absolutely critical for the jury to know that Ms. Graham had not only lied to police before, but has three prior convictions for doing so. The jury was deprived of knowing the voluminous evidence which existed demonstrating Ms. Graham's tendency to lie for her benefit.

Petition (Dkt. #1), pp. 10-11.

The post-conviction court denied this claim and said:

> In ground three, Defendant asserts that counsel was ineffective for failing to impeach the co-defendant's testimony with prior convictions. Defendant states that "the jury was deprived of knowing the voluminous evidence which existed demonstrating Ms. Graham's tendency to lie for her benefit." Defendant claims that had the jury known of her prior record "the jury would have been provided the requisite knowledge to reasonably find that Ms. Graham was again lying to police to avoid a lengthy prison sentence in the instant case."
>
> First, the jury was fully aware, through both direct examination and cross examination, that the co-defendant was incarcerated as part of a plea deal in the instant case. *Trial Transcripts*, p. 191-92, 226, attached hereto as Exhibit "C." Next, counsel could have inquired solely into the number of prior convictions, and only if the witness was untruthful could the substance of the prior crimes been introduced. *See e.g. Jackson v. State*, 25 so.3d 518 (Fla. 2009). Finally, the co-defendant never directly implicated Defendant. *See e.g., Trial Transcript*, p. 337, attached hereto as Exhibit "D." Therefore, Defendant's statement that the counsel's failure to impeach deprived the jury of the knowledge required to question the truthfulness of the co-defendant, is clearly refuted by the record. Also Defendant cannot show that had the impeachment occurred it is likely the outcome would have been different. As such, Defendant cannot show either deficiency or prejudice as required under *Strickland*, and ground three must be denied.

Order Denying Motion for Post-Conviction Relief, Exhibit X, pp. 4-5.

The post-conviction court was correct that, in general, in impeaching a witness on prior convictions one is only allowed to ask about the number of prior felony convictions or crimes involving moral turpitude. This would not allow counsel to explore the facts behind a conviction. But here the jury knew most of this information anyway. Graham was in an orange prison jumpsuit when she testified, she acknowledged that she had received a five year sentence and could have received a life sentence because she was a "reoffender," she had previously had a bad fight with Gail Thompson in which Thompson "got hurt real bad," and that she and Thompson were getting high immediately prior to the robbery.

Therefore, had counsel impeached Graham with the number of her prior felony convictions, it is highly unlikely the result of the trial would have been any different. Therefore, this Ground must be denied because Casey has failed to demonstrate prejudice.

**Ground Four:** State court's adjudication of whether Mr. Casey was denied his constitutional right to due process, as well as to the effective assistance of counsel, when trial counsel failed to move to exclude both the in court and out-of-court identifications by the complainant was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

In Ground Four, Casey argues that his trial counsel was ineffective for failing to move to suppress both the in court and out of court identifications of him by the victim. Interestingly, Casey never suggests that the photo array was unduly suggestive or in any way improper. Likewise, Casey gives no facts about the in court identification that would make it susceptible to being excluded at trial. The post-conviction court appropriately denied this claim and said:

> In ground four, Defendant claims that counsel was ineffective for failing to exclude both the in court and out of court identification of Defendant, Defendant asserts that counsel should have moved to exclude the identifications because of the discrepancies in the victim's descriptions between the night of the robbery and trial.
>
> As to out of court identifications, the standard used for exclusion is two-pronged: (1) whether the procedure used by the police was unnecessarily suggestive; and (2) if so, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *State v. Dorsey*, 5 So.3d 702, (Fla. 2d DCA, 2009). If the pre-trial identification is found have been obtained by an unnecessarily suggestive procedure, then the in-court identification may be admissible if it is found to be reliable and based solely on the witness' independent recollection of the offender at the time of the crime. *Id quoting, Edward v. State*, 538 so.2d 440, (Fla. 1982).

> First, in Defendant's motion, there is no allegation that the procedure used for the photographic lineup was unnecessarily suggestive. Therefore, since prong one has not even been alleged, there is no reason for the Court to consider the factors outlined in Defendant's motion. Since, Defendant cannot allege that the procedure used by police was unnecessarily suggestive, the Court cannot find that counsel's failure to file a motion to suppress was deficient because no basis existed for suppressing either the lineup or the in court identification. Furthermore, counsel alerted the jury to the discrepancies between the victim's description of the assailant on the night of the robbery and at trial. *Trial Transcript*, p. 333-35, attached hereto as Exhibit "E." Therefore, because no deficiency has been shown, ground four must be denied.

Order Denying Motion for Post-Conviction Relief, Exhibit X, pp. 5-6.

The post-conviction court appropriately applied federal law in denying this claim and Casey has not demonstrated otherwise. Therefore the claim will be denied.

**Ground Five:** State court's adjudication of whether Mr. Casey was denied his constitutional right to the effective assistance of counsel when trial counsel prohibited Mr. Casey from testifying in his own defense was an unreasonable application of, clearly established federal law – *Strickland v. Washington.*

In support of Ground Five, Casey argues:

> In the instant case, defense counsel informed Mr. Casey of his constitutional right to testify in his own defense. In an attempt to persuade Mr. Casey to not exercise such a right, however, counsel advised that doing so would permit the prosecution to extract the details of specific offenses constituting Mr. Casey's criminal history. Counsel's misadvice deprived Mr. Casey of the opportunity to present his testimony corroborating the alibi defense. Because Mr. Casey was persuaded to waive a fundamental constitutional right by counsel's misadvice, Mr. Casey's judgment and sentence should be vacated or, at a minimum, an evidentiary hearing conducted. At the hearing, Mr. Casey remained adamant that he desired to testify in his own defense. Had he testified at trial, the jury would have heard the alibi from Mr. Casey himself, that he was with his girlfriend, Samantha Cruz on the night of the alleged offense. Because Mr. Casey was persuaded to waive a fundamental constitutional right by trial counsel's misadvise (sic), the state trial court erred in denying this claim.

Petition (Dkt. #1), p. 18.

The Court notes that Casey's argument in support of Ground Five is contrary to his previous argument in Ground Three that his trial counsel was ineffective for not getting into the specifics of Graham's prior felonies. Now he argues that his trial counsel was ineffective for "misadvising" him that the state might impeach his testimony with the facts of his prior felonies (which numbered between twenty and twenty-four). That aside, the post-conviction court denied this claim and said:

> In ground five, Defendant asserts that counsel was ineffective for misadvising Defendant regarding his right to testify at trial. Defendant claims that counsel, in an attempt to persuade him not to testify, advised that doing so would permit the prosecution to "extract the details of specific offenses... ." Because this ground could not be conclusively refuted from the record, a hearing was held on June 10, 2010.
>
> At hearing, defense counsel testified regarding discussions she had with Defendant about his right to testify at trial. *Hearing Transcript*, p. 21-3, attached hereto as Exhibit "F." Defense counsel was asked "[a]nd what did you tell him was the extent that the State could ask about felony convictions?" Counsel replied, "[i]f he's not truthful about the number of felonies, then the State can go through the felonies themselves. However, if he testified truthfully about the number of felonies, then it would only be the number that would come in." *Id* at 22. Furthermore, counsel stated that due to the number of Defendant's prior convictions, twenty to twenty-four, a strategic decision was made for Defendant not to testify. Counsel stated "[m]y concern was that while they could – while the jury would only know the number, Mr. Casey makes a nice appearance and I think a jury is looking to see the defendant to see what kind of person he is, and having him testify that he had that many felony convictions was certainly going to be a detriment to the case." *Id*. Therefore, Defendant's assertion that counsel was ineffective for misadvising Defendant about his right to testify is clearly refuted by counsel's testimony at hearing. Additionally, counsel and Defendant made a strategic decision not to have Defendant take the stand for fear that the jury knowing the sheer amount of prior convictions would be detrimental to Defendant. Therefore, Defendant's claims is refuted by the record and ground five must be denied.

Order Denying Motion for Post-Conviction Relief, Exhibit X, pp. 6-7.

Casey acknowledges that his counsel told him it was his choice whether or not to testify. He only contends that he was "misadvised" that the state might get into the specifics of his prior twenty to twenty-four felonies. That was refuted by trial counsel in her testimony at the evidentiary hearing, and this Court is presumptively bound by the findings of fact of the post-conviction court on that issue. Casey is unable to overcome the post-conviction court's finding of fact. And it is clear that the negative impact on the jury of learning that Casey was convicted of twenty to twenty-four prior felonies might significantly harm Casey's case. Therefore, the advice from counsel is not deficient performance and was a matter of appropriate trial strategy. Therefore, this Ground will be denied.

## CONCLUSION

Having determined that each Ground in the Petition lacks merit, the Court concludes the Petition should be denied. It is therefore

ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

    **DONE** and **ORDERED** in Tampa, Florida on February 18, 2014.

*[signature: James S. Moody, Jr.]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2012\12-cv-470 Ocala deny 2254.wpd*